UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

ROY MATHEW, JAYSON YESUDASAN, ABDUR
HOWLADER, MIAH SALIM MOHAMMAD
individually and on behalf of others similarly situated,

Docket No. 17-cv-9870 (RWS)

Plaintiffs,

**AMENDED COMPLAINT**

-against-

**JURY TRIAL DEMANDED**

SMZ IMPEX, INC., FARM AND GROCERY, INC.,
KUSUM SHAH, individually, BHARAT SHAH,
individually, JIGAR SHAH, individually, MANGESH
SHAH, individually, and JAGESH SHAH, individually,

**Collective Action and Class
Action Complaint**

Defendants.

------------------------------------------------------------------X

Plaintiffs ROY MATHEW, JAYSON YESUDASAN, ABDUR HOWLADER, MIAH

SALIM MOHAMMAD  individually, and on behalf of all others similarly situated (collectively

"Plaintiffs," "FLSA Plaintiffs" or "New York Class"), by and through their attorneys, Joseph &

Norinsberg, LLC, as and for Plaintiffs' Complaint against SMZ IMPEX, INC., VILLAGE FARM

AND GROCERY, INC., KUSUM SHAH, BHARAT SHAH, JIGAR SHAH, MANGESH SHAH,

and JAGESH SHAH, (collectively "Defendants"), allege upon knowledge as to Plaintiffs, and

upon information and belief as to all other matters, as follows:

**NATURE OF CASE**

1.      This is a civil action for damages and equitable relief based upon Defendants'

violations of Plaintiffs' rights guaranteed to them by: (i) the minimum wage, overtime provisions,

and tip credit provisions of the Fair Labor Standards Act, as amended 29 U.S.C. §§ 201 *et seq.*

("FLSA"); (ii) the minimum wage and overtime provisions of the New York Labor Law

("NYLL"); (iii) the tip credit provisions as contained in New York State regulation, 12 N.Y.C.R.R. § 146-1.3; (iv) the anti-retaliation provision of NYLL § 215; (v) the requirement that employers furnish employees with wage statements on each payday, containing specific categories of accurate information, and also provide employees with accurate wage notice at the time of hiring, and on an annual basis, pursuant to NYLL § 195(1) and (3), codified as the New York Wage Theft Prevention Act (the "NYWTPA"); (vi) the spread of hours requirement as contained in New York State regulation, 12 NYCRR § 142 *et seq*; (vii) the prohibition against unlawful deductions as contained in NYLL §193; (viii) the requirement that employers provide employees with uninterrupted meal breaks, as set forth in NYLL §162; (ix) the religious anti-discrimination provisions of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 (1) and (7), and New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107; and (x) and any other cause(s) of action that can be inferred from the facts set forth herein.

## PRELIMINARY STATEMENT

2.     Defendants SMZ IMPEX, INC. and VILLAGE FARM AND GROCERY, INC. own and operate an East Village-based grocery store that relies primarily on an immigrant work force – which it grossly underpays and exploits – to run its retail establishment and to deliver food, alcohol and other goods to customers within Manhattan.

3.     As many of the employees are immigrants with limited employment options, the Defendants used a combination of threats and scare tactics to maintain its work force, while consistently engaging in fraudulent and unlawful pay practices.

4.     Plaintiffs and class members routinely work seventy-two hours or more per week for Defendants and are paid as little as $6.00 per hour for their work, without receiving minimum wage pay, overtime wages at the statutory rate, tips, meal breaks, or spread-of-hours pay. To

camouflage these unlawful policies, Defendants have a pattern and practice of paying Plaintiffs in cash only, without supplying them with accompanying paystubs, wage statements, or any other pay records.

5.     Defendants have also implemented an unlawful policy of appropriating Plaintiffs' tips.  Specifically, when a client designates a tip amount to be given to the Plaintiffs, the Defendants alter the tip amount and reduce it significantly, so that the Plaintiffs only receive a small portion of their assigned tips, while Defendants appropriate the balance. Thus, if a client issued a tip for one hundred dollars on the delivery of several cases of beer, the Defendants would reduce the tip amount to twenty dollars, and then appropriated the remaining eighty dollars for themselves.

6.     Defendant Village Farm Grocery and its owners and managers, Defendants Kusum Shah, Bharat Shah, Jigar Shah, Mangesh Shah, and Jagesh Shah have established a business model based on the exploitation of its workforce, where compensation is submitted under the table in cash, so that their misconduct may never be uncovered. The named Plaintiffs are now bringing this action, on behalf of themselves and all other similarly situated employees, to hold Defendants accountable for their unlawful pay practices. Additionally, Plaintiffs bring this action to recover their back wages, liquidated damages, and all other remedies available to them under federal and state law.

## JURISDICTION AND VENUE

7.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331, as this action involves a question of federal law arising under 29 U.S.C. § 201.

8.     This Court has supplemental jurisdiction over all state law claims stated herein pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal

claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2), as at least one Defendant resides in New York City, and all acts comprising the claims for relief occurred within this judicial district.

**JURY DEMAND**

10.      Plaintiffs respectfully demand a trial by jury on each count of this complaint pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

11.      At all relevant times herein, Plaintiff Roy Mathew ("Mr. Mathew") was and is a resident of the City and State of New York, maintaining an address at 8632 Little Neck Parkway in Queens. Mr. Mathew was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

12.      At all relevant times herein, Mr. Mathew was an "employee" entitled to protection as defined by the NYLL and NYWTPA.

13.      At all relevant times herein, Plaintiff Jayson Yesudasan ("Mr. Yesudasan") was and is a resident of the City and State of New York, maintaining an address at 8324 243rd Street in Queens. Mr. Yesudasan was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

14.      At all relevant times herein, Mr. Yesudasan was an "employee" entitled to protection as defined by the NYLL and NYWTPA.

15.      At all relevant times herein, Plaintiff Abdur Howlader ("Mr. Howlader") was and is a resident of the City and State of New York, maintaining an address at 103-55 97th Street in

Queens. Mr. Howlader was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

16.     At all relevant times herein, Mr. Howlader was an "employee" entitled to protection as defined by the NYLL and NYWTPA.

17.     At all relevant times herein, Plaintiff Miah Salim Mohammad ("Mr. Mohammad") was and is a resident of the City and State of New York, maintaining an address at 3506 73rd Street in Queens. Mr. Mohammad was an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

18.     At all relevant times herein, Mr. Mohammad was an "employee" entitled to protection as defined by the NYLL and NYWTPA.

**Defendant SMZ Impex, Inc.**

19.     At all relevant times herein, Defendant SMZ, Impex, Inc. was and is a domestic business corporation with a principal place of business located at 146 2nd Avenue, in the County, City and State of New York, and an address for service located at 61-25 Woodside Ave. #5b Woodside, New York, 11377.

20.     At all relevant times herein, SMZ Impex, Inc. was and is an "employer" within the meaning of the FLSA and NYLL, and is an "employer" that "employs" four or more "employees" within the meaning of the NYLL.

21.     At all times relevant herein, Defendant SMZ Impex, Inc. was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, et seq. Further, at all times relevant to this action, Defendant SMZ Impex, Inc. was engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects it to the FLSA's overtime requirements.   Additionally, all of the

Defendant's employees, including Plaintiffs, are individually engaged in interstate commerce, as they all handled goods that have been moved in interstate commerce.  This independently subjects SMZ Impex, Inc. to the overtime requirements of the FLSA.

22.     At all relevant times herein, Defendant Kusum Shah was and is a principal owner And the chief executive officer, owner, shareholder, director, supervisor and managing agent of SMZ Impex, Inc., and who is an employer pursuant to the FLSA, 29 U.S.C. § 203(d), and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law § 2 and the regulations thereunder, and is jointly and severally liable with the corporate defendant SMZ Impex Inc.

23.     Upon information and belief, SMZ Impex, Inc. is a parent, subsidiary, predecessor and/or alter ego of Defendant Village Farm and Grocery Inc., as both entities maintain the same business addresses and maintain the same management personnel.

**Defendant Village Farm and Grocery, Inc.**

24.     At all relevant times herein, Defendant Village Farm and Grocery Inc. ("Village Farm Grocery"), was and is a domestic business corporation with its offices located at 61-25 Woodside Ave. #5F Woodside, New York, 11377.

25.     At all times relevant herein, Defendant Village Farm Grocery was an "employer" under the FLSA, 29 U.S.C. § 203(d), subject to the provisions of 29 U.S.C. §§ 201, *et seq*. Further, at all times relevant to this action, Defendant was engaged in interstate commerce, as defined by the FLSA, and Defendant's qualifying annual business exceeds $500,000.00, the combination of which subjects Defendant Village Farm Grocery to the FLSA's overtime requirements. Additionally, all of Defendant's employees, including Plaintiffs, are individually engaged in

interstate commerce, as they all handled goods that have been moved in interstate commerce.  This independently subjects Defendants to the overtime requirements of the FLSA.

26.     At all relevant times herein, Defendant Bharat Shah was and is an owner, shareholder, director, supervisor and managing agent of Defendant Village Farm Grocery who actively participated and continues to actively participate in the day-to-day operations of Village Farm Grocery, and who is an employer pursuant to the FLSA, 29 U.S.C. § 203(d), and the regulations promulgated thereunder, 29 C.F.R. § 791.2, as well as the New York Labor Law § 2 and the regulations thereunder, and is jointly and severally liable with the corporate defendant Village Farm Grocery.

27.     At all relevant times herein, Defendant Bharat Shah exercised and continues to exercise control over the terms and conditions of Plaintiffs' employment and the employment of all other similarly situated Village Farm Grocery employees, in that he has the power to (i) hire and fire employees; (ii) determine rates and methods of pay; (iii) determine work schedules through the Village Farm Grocery mobile app; (iv) supervise work and control of the employees, include the Plaintiffs herein; and (v) otherwise affect the quality of the employees' work conditions and employment.

28.     At all relevant times herein, Defendant Jigar Shah was the operations manager of Village Farm Grocery, and was in charge of the day-to-day operations.  Defendant Jigar Shah makes both supervisory and managerial decisions for Village Farm Grocery, and has the power to hire and fire employees.  Jigar Shah also supervised and controlled the employees' work schedules and conditions of employment.

29.     At all relevant times herein, Defendant Mangesh Shah was the general manager of Village Farm Grocery, and was in charge of the overall operation of the store.  Defendant Mangesh

Shah makes both supervisory and managerial decisions for Village Farm Grocery, and has the power to hire and fire employees.  Mangesh Shah also supervised and controlled the employees' work schedules and conditions of employment.

30.     At all relevant times herein, Defendant Jagesh Shah was the delivery manager of Village Farm Grocery, and was in charge of the delivery drivers and couriers.  Defendant Jagesh Shah makes both supervisory and managerial decisions for Village Farm Grocery, and has the power to hire and fire employees.  Jagesh. Shah also supervised and controlled the employees' work schedules and conditions of employment for delivery employees.

## COLLECTIVE ACTION ALLEGATIONS

31.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following class:

> Current and former employees of Defendants, during the relevant statutory period, including but not limited to, delivery persons, cashiers, watchmen, and all others similarly situated employees: (i) to recover minimum wage pay for hours worked up to forty (40) per week; (ii) tips withheld from employees; (iii) wages not paid in violation of the tip credit provisions of the FLSA; (iv) and overtime compensation at the statutory rate which is legally due to them for the time worked in excess of forty (40) hours per week ("FLSA Plaintiffs").

32.     The class of employees on behalf of whom Plaintiffs brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policies or plans namely, Defendants' policy of  inter alia: (i) not paying their employees at the minimum wage for hours worked up to forty (40) per week; (ii) not paying employees for their overtime hours at a rate of one-and-one-half times their regular rate; (iii) and withholding tips from employees, among other violations, and; (c) their claims are based upon the same factual and legal theories; and (d) the

employment relationship between Defendants and every putative Class member is exactly the same and differs only by name, location, and rate of pay.

33.     Specifically, for the duration of the Plaintiffs' employment with Defendants, Plaintiffs worked between 62 and 72 hours or more per week and were not compensated at the minimum wage for the hours that they worked up to forty (40) each week. Likewise, Plaintiffs were not compensated at the statutorily required rate of one-and-one-half times their standard pay rate for the hours that they worked in excess of forty (40). Furthermore, Defendants routinely kept a large portion of Plaintiffs' tips, and Plaintiffs never received notice that Defendants were claiming a tip credit to offset Plaintiffs' minimum wage.

34.     Plaintiffs estimate that the FLSA Plaintiffs, including both current and former employees during the relevant statutory period, includes at least 65 members. The precise number of FLSA Plaintiffs members should be readily available from a review of Defendants' personnel, scheduling, time and payroll records, and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

35.     Plaintiffs' entitlement to overtime pay would be similar to that of the other FLSA Plaintiffs, and their claim would depend on identical factual and legal questions, including but not limited to:

        a.  whether Defendants violated the FLSA through their pay practices;

        b.  whether Defendants misappropriated Plaintiffs' tips and violated the FLSA through their tip practices;

        c.  whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the FLSA; and

        d.  whether Defendants' violations were willful.

## RULE 23 CLASS ACTION ALLEGATIONS UNDER NEW YORK LAW

36.     Plaintiffs also seek to maintain this action pursuant to Federal Rule of Civil

Procedure 23(b)(3) and (c)(4) on behalf of a putative class defined to include:

> All current and former employees of Defendants who perform or performed
> any work in any of Defendants' locations in any capacity, during the
> statutory period, within the State of New York, who were: i) denied
> minimum wage and/or overtime wages at the statutory rate of one-and-one-
> half times the employee's standard pay rate; ii) were subject to tip credit
> violations; iii) were denied meal breaks; and iv) were denied spread-of-
> hours pay in violation of the NYLL and the N.Y.C.R.R. (hereinafter, the
> "New York Class").

37.     *Numerosity*: The members of the New York Class are so numerous that joinder of

all members in the case would be impracticable. Plaintiffs reasonably estimate that there are over

65 Class members who reside and work in New York.  The precise number of Class members

should be readily available from a review of Defendants' personnel and payroll records.

38.     *Commonality/Predominance*:  There is a well-defined community of interest

among the New York Class members and common question of *both* law and fact predominate in

the action over any questions affecting individual members.  These common legal and factual

questions include, but are not limited to, the following:

> a.     whether Defendants failed to pay the New York Class the minimum wage;
>
> b.     whether the New York Class worked in excess of forty (40) hours per week
>        and/or ten (10) hours per day;
>
> c.     whether Defendants failed to pay the New York Class at the statutory rate
>        for the hours worked in excess of forty (40) hours;
>
> d.     whether Defendants misappropriated Plaintiffs' tips;
>
> e.     whether Defendants violated the NYLL and the N.Y.C.R.R. by failing to
>        properly notify the New York Class Plaintiffs of their intent to take a tip
>        credit to offset their wages;

      f.     whether Defendants violated the NYLL and the N.Y.C.R.R. by failing to properly pay the New York Class Plaintiffs in accordance with the applicable tip credit law;

      g.     whether Defendants violated the NYWTPA for failing to establish, maintain and preserve true and accurate payroll records;

      h.     whether the New York Class Members were compensated for spread of hours;

      i.     whether Defendants violated the NYLL through its pay practices;

      j.     whether Defendants violated the NYLL by failing to provide uninterrupted meal breaks;

      k.     whether Defendants' violations were willful; and

      l.     whether Defendants should be required to pay compensatory damages, attorneys' fees, costs, and interest for violating the NYLL and the N.Y.C.R.R.

39. *Typicality*: Plaintiffs' claims are typical of those of the New York Class in that Plaintiffs and all other members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices and course of conduct as all other New York Class members' claims and Plaintiffs' legal theories are based on the same legal theories as all other New York Class members, as detailed above.

40. *Adequacy*: Plaintiffs will fully and adequately protect the interests of the New York Class, and Plaintiffs have retained counsel who are qualified and experienced in the litigation of wage-and-hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the New York Class.

41. *Superiority*: A class action is superior to other available methods for the fair and efficient adjudication of the controversy, because, *inter alia*, it is economically infeasible for the

New York Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

42.     This case will be manageable as a class action because Defendants have or should have payroll systems that will allow the wage-and-hour facts and damages issues in the case to be resolved with relative ease.  Because the elements of Rule 23(b)(3), or in the alternative (c)(4), are satisfied in the case, class certification is appropriate.

<u>**CLASSWIDE FACTUAL ALLEGATIONS**</u>

<u>**Defendants Willfully Failed to Pay Plaintiffs the Minimum Wage**</u>

43.     Village Farm Grocery is a grocery store located in the East Village that offers traditional retail grocery shopping as well as delivery services to customers within Manhattan.

44.      Customers can order items online via Village Farm Grocery's website, or shop at its retail establishment, located at 146 2nd Avenue.

45.     Village Farm Grocery employs more than 65 employees, including cashiers, delivery persons and watchmen, among others.

46.     Village Farm Grocery pays its employees on a weekly basis, in cash only.

47.     Prior to 2012, Defendants paid Plaintiffs at a rate of between $6.00 and $6.50 per hour. After 2012, Defendants paid Plaintiffs at a rate of between $6.50 and $9.50 per hour. Accordingly, during most of the relevant time period, Defendants willfully paid their employees at a rate *below minimum wage* under both federal and state law.

48.     Defendants knew or should have known that, under the FLSA, starting in 2009, Plaintiffs and the FLSA Plaintiffs should have been paid a federal minimum wage of not less than $7.25 per hour for all hours work up to forty (40) hours per week.

49.     Similarly, Defendants knew or should have known that, under New York Labor Law §652, employers are required to compensate their employees at a minimum hourly rate of:

> $7.25 on and after July 24, 2009
> $8.00 on and after December 31, 2013
> $8.75 on and after December 31, 2014
> $9.00 on and after December 31, 2015
> $11.00 on and after December 31, 2016
> $13.00 on and after December 31, 2017

50.     In willful disregard of the FLSA, the NYLL and the N.Y.C.R.R., Defendants failed to pay the Plaintiffs, the FLSA Plaintiffs and the New York Class the lawful minimum wages for each hour that they worked up to forty (40) in a work week.

51.     Furthermore, as set forth below, Defendants were not entitled to supplement the minimum wage with tip credits because they failed to satisfy the necessary statutory requirements under the FLSA and the NYLL.

**Defendants Willfully Failed to Pay Plaintiffs the Mandatory Statutory Rate for Their Overtime Hours.**

52.     Throughout their employment with Village Farm Grocery, Plaintiffs routinely worked between sixty-six (66) and seventy-two (72) hours per week.

53.     In willful disregard of relevant federal and state law, Village Farm Grocery did not compensate Plaintiffs the statutorily-mandated rate of one-and-one-half their regular hourly rate of pay for any hours that they worked each week in excess of forty (40).

54.     Instead, Village Farm Grocery continued to pay Plaintiffs at a rate of between $6.00 and $6.50 per hour through 2012 and between $6.50 and $9.50 per hour after 2012, regardless of how many hours per week they worked.

55.     Defendants knew or should have known that, under the FLSA, Plaintiffs and the FLSA Plaintiffs should have been paid for their overtime hours "at a rate not less than one-and-one-half times the regular rate" at which they were employed. 29 U.S.C. § 207(a)(1).

56.     Defendants knew or should have known that, under the NYLL and N.Y.C.R.R., Plaintiffs and the New York Class should have been paid for their overtime hours "at a rate not less than one-and-one-half times the regular rate" at which they were employed. N.Y. Lab. Law § 160 and N.Y.C.R.R. tit. 12, § 142-2.2.

57.     Defendants willfully and intentionally failed to pay Plaintiffs, the FLSA Plaintiffs and the New York Class their lawful wages.

**Defendants Misappropriated Plaintiffs' Tips and Cannot Claim a Tip Credit Because They Violated the Basic Statutory Requirements.**

58.     Throughout their employment with Village Farm Grocery, Plaintiffs relied on tips from customers to supplement their low hourly wage.

59.     However, Defendants systematically misappropriated a large portion of Plaintiffs' tips for themselves by willfully altering the receipts. For instance, if a customer left a tip of fifty dollars for a large delivery order, Defendants would alter the tip "$10.00" which would be given to the delivery person and would retain the forty-dollar balance for themselves.

60.     Because Defendants would only give Plaintiffs the fraudulent receipt, Plaintiffs had no way of knowing how much they were actually being tipped. Occasionally, they would see the "actual" receipt and then realize that the Defendants were essentially stealing their tips.

61.     This practice was an express violation of federal and state law governing tips, and Defendants made no attempt to pretend otherwise. Notably, Defendants did not, inter alia: (a) notify Plaintiffs that they had a right to retain all tips that they received; (b) provide Plaintiffs with notice that the Defendants would be taking a proposed tip credit; (c) notify Plaintiffs that the proposed tip credit may not, as a matter of law, exceed the number of tips actually received by Plaintiffs.

62.     Furthermore, in violation of the NYLL and NYWTPA, Defendants never provided Plaintiffs with a wage statement that listed the total amount of tip credit deducted for each pay period, leaving Plaintiffs completely unaware of exactly how much they were being tipped, how much Defendants were misappropriating for themselves, and how much Defendants were claiming as a proposed tip credit.

63.     In sum, Defendants did not provide notice about any aspect of the tip credit under the FLSA, NYLL or the N.Y.C.R.R. to Plaintiffs at any point during their employment. Accordingly, it is uncontroverted that Defendants' misconduct regarding Plaintiffs' tips was calculated and deliberate, and Defendants cannot claim entitlement to a tip credit.

**Defendants Violated NYLL's Spread of Hours Laws**

64.     Defendants regularly required Plaintiffs and the New York Class to work in excess of sixty-two (62) to seventy-two (72) hours per week.

65.     Plaintiffs and the Class Actions Plaintiffs routinely worked in excess of ten (10) hours per day, six days per week.

66.     Despite employees regularly working shifts in excess of ten (10) hours per day, Defendants failed to compensate Plaintiffs and the New York Class for the legally mandated spread of hours pay, in violation of 12 N.Y.C.R.R. § 142-2.4.

67.     Defendants knew or should have known that, under the N.Y.C.R.R., Plaintiffs should have been compensated for working in excess of ten (10) hours each day.  12 N.Y.C.R.R. § 142-2.4.

68.     Defendants failed to compensate Plaintiffs in accordance with the N.Y.C.R.R.. Specifically, Defendants failed to provide Plaintiffs with an additional hour of pay for each day that they worked a spread of hours that exceeded 10 hours.

**Defendants Violated NYLL's Meal Break Requirements**

69.     Plaintiffs and the New York Class regularly worked shifts of more than six (6) hours, often working as long as twelve (12) hours per shift, and they were routinely denied their required meal break.

70.     Whether they covered the day shift or the night shift, Plaintiffs were lucky if they were afforded a quick ten (10) to fifteen (15) minute break to eat.

71.     Although Plaintiffs and the New York Class regularly worked shifts of more than six (6) hours between the hours of 1:00 p.m. and 6:00 a.m., Defendants willfully refused to provide them with an uninterrupted forty-five (45) minute meal break, in violation of NYLL § 162.

72.     In addition, Plaintiffs and the New York Class regularly worked shifts that started before 11:00 a.m. and continued later than 7:00 p.m.; however, Defendants willfully refused to provide its employees with an additional twenty (20) minute break during these shifts, in violation of NYLL § 162.

73.     Defendants' violation of NYLL § 162 shows a complete disregard for the health, safety, and wellbeing of its employees.

**Unlawful Deductions**

74.     Plaintiffs and New York Class members who worked as delivery persons for Defendants were routinely required to use their own funds for the benefit of Defendants, in express violation of NYLL § 193.

75.     Specifically, Defendants did not compensate these Plaintiffs for any of their incurred weekly/monthly/annual expenses, including but not limited to, vehicle fuel, weekly car rental fees, and parking costs.

16

76.     Such employee-paid expenses were not authorized by Plaintiffs or the class, and were not made for the benefit of the employee within the meaning of NYLL § 193.

77.     As a result of Defendants' failure to reimburse its employees for these expenses, such employees were deprived of their right to be free of expenditures, a condition of employment, as guaranteed to them by the NYLL.

78.     Due to Defendants' failure to reimburse the delivery Plaintiffs for their expenses, their net earnings were reduced by hundreds of dollars each month.

79.     Because Plaintiffs and other similarly situated employees were paid below or very near New York's minimum wage, their expenses incurred in paying for car rentals, vehicle fuel and parking expenses reduced their net wage below New York's minimum wage.

## INDIVIDUAL FACTUAL ALLEGATIONS

### Plaintiff Roy Mathew

80.     Plaintiff Roy Mathew began working for Village Farm Grocery in 2009 as a delivery driver and a night watchman.

81.     Throughout his employment, Mr. Mathew would typically work between nine (9) and twelve (12) hours per day, six to seven days per week, for a total of seventy-two (72) hours per week.

82.     Mr. Mathew worked overnight for Defendants, generally working from either 7:00 p.m. to 4:00 a.m. or 4:00 p.m. to 4:00 a.m.

83.     Occasionally, Mr. Mathew worked eighty-five (85) to eighty-six (86) hours per week.

84.     From 2009 through 2012, Village Farm Grocery paid Mr. Mathew at a rate of $6.50 per hour, in cash only, on a weekly basis.

85.     From 2012 through 2017, Village Farm Grocery paid Mr. Mathew at a rate of $8.00 per hour, in cash only, on a weekly basis.

86.     Defendants computed Mr. Mathew's hours based on time sheets. However, the time sheets were often not accurate. As such, Mr. Mathew felt compelled to record his hours on his cell phone to ensure that an accurate record existed.

87.     Despite consistently working at least seventy-two (72) hours per week, Defendants never paid Mr. Mathew at the statutory overtime rate for the hours that he worked in excess of forty (40) each week, which is one-and-one-half times his regular rate of pay, or one-and-one-half-times the prevailing minimum wage.

88.     Furthermore, Defendants consistently misappropriated Mr. Mathew's tips for themselves, by providing him with doctored receipts that listed a smaller tip amount than the tip given by the customer.

89.     Defendants have never provided Mr. Mathew with a wage statement at any point in his employment.  Likewise, Defendants have never provided Mr. Mathew with a pay stub that lists the hours that Mr. Mathew has worked in a pay period, his rate of pay, the tips that he has earned, or any tip credit deductions.

90.     When Mr. Mathew complained to his supervisors about his unlawful wages, his misappropriated tips, and other unlawful conduct, they threatened him with termination or threatened that they would file a fabricated charge against him with the police.

91.     Having no alternative and fearing for his own safety and the safety of his family, Mr. Mathew instituted the within legal action to pursue his claims against Defendants.

92.     Soon after learning of Plaintiff's intent to file a lawsuit, Defendants engaged in retaliatory conduct and demoted Mr. Mathew to part-time employment rather than full-time employment.

93.     On or about February 13, 2017, Mr. Mathew communicated to Defendant Bahrat Shah and asked him to override the decision to decrease his hours and permit him to continue working full-time. At the same time, Mr. Mathew requested from Mr. Bahrat that he receive lawful compensation at the minimum wage rate, overtime compensation at the statutory rate, the full balance of the tips he received, and reimbursements for expenses he had incurred on Defendants' behalf.  Mr. Bahrat did not respond to Mr. Mathew.

94.     Instead, the retaliation escalated, and Defendants withheld Mr. Mathew's weekly compensation.  Defendants told Mr. Mathew that they would not fire him because they did not want to pay his unemployment benefits, but they also did not want to compensate him for his working hours.

95.     On or about February 16, 2017, Mr. Mathew communicated to Defendant Bahrat Shah and requested his past-due compensation. Mr. Mathew also asked for clarification regarding his employment status.

96.     Shortly thereafter, Mr. Mathew was advised that Defendants no longer had a position for him.

**Plaintiff Jayson Yesudasan**

97.     Defendants hired Plaintiff Jayson Yesudasan in January 2015 to work as a delivery driver.

19

98.     From January 2015 through January 2017, Mr. Yesudasan would typically work twelve (12) hours a day, from 10:00 a.m. to 10:00 p.m. daily, six (6) days a week, for a total of seventy-two (72) hours per week.

99.     Throughout his employment, Village Farm Grocery paid Mr. Yesudasan at a rate of $8.00 per hour, in cash only, on a weekly basis.

100.    Defendants computed Mr. Yesudasan's hours, based on time sheets; however, the time sheets were not always accurate.

101.    Despite consistently working at least seventy-two (72) hours per week, Defendants never paid Mr. Yesudasan at the statutory overtime rate for the hours that he worked in excess of forty (40) each week, which is one-and-one-half-times his regular rate, or one-and-one-half-times the prevailing minimum wage.

102.    Furthermore, Defendants consistently misappropriated Mr. Yesudasan's tips for themselves, by providing him with doctored receipts that listed a smaller tip amount than the tip given by the customer.

103.    Defendants have never provided Mr. Yesudasan with a wage statement at any point during his employment.  Likewise, Defendants have never provided Mr. Yesudasan with a pay stub that lists the hours that he worked in a pay period, his rate of pay, the tips that he has earned, or any tip credit deductions.

104.    On or about January 2017, Mr. Yesudasan asked Defendants to pay him minimum wage, as Defendants are required to do by law.

105.    Defendants refused to pay Mr. Yesudasan the minimum wage and told him that if he objected to their pay practices, he was welcome to go find other employment.

106.     Mr. Yesudasan was compelled to tender his resignation, as no employee should be forced to work in an environment where they are subject to violations of federal and state law, and where their employer refuses to compensate them in accordance with the law.

**Plaintiff Abdur Howlader**

107.     Defendants hired Plaintiff Abdur Howlader in July 2006 to work as a night shift cashier.

108.     Throughout his employment, Mr. Howlader would typically work eleven (11) hours per day, six days per week, for a total of sixty-six (66) hours per week.

109.     Mr. Howlader worked from approximately 6:00 p.m. to 5:00 a.m. at Village Farm Grocery, with one ten (10) to fifteen (15) minute break to eat.

110.     From July 2006 through June 2013, Defendants paid Mr. Howlader at a rate of $6.00 per hour, in cash only, on a weekly basis.

111.     From July 2013 through November 2016, Defendants paid Mr. Howlader at a rate of $9.50 per hour, in cash only, on a weekly basis.

112.     Despite consistently working at least sixty-six (66) hours per week, Defendants never paid Mr. Howlader at the statutory overtime rate for the hours that he worked in excess of forty (40) each week, which is one-and-one-half-times his regular rate, or one-and-one-half-times the prevailing minimum wage.

113.     Defendants have never provided Mr. Howlader with a wage statement at any point during his employment.  Likewise, Defendants have never provided Mr. Howlader with a pay stub that lists the hours that he worked in a pay period or his rate of pay.

114.     On or about November 2016, Mr. Howlader asked Defendants to pay him minimum wage, as Defendants are required to do by law.

115.     Defendants refused to pay Mr. Howlader the minimum wage and told him that if he objected to their pay practices, he was welcome to find other employment.

116.     Mr. Howlader was compelled to tender his resignation, as no employee should be forced to work in an environment where they are subject to violations of federal and state law, and where their employer refuses to compensate them in accordance with the law.

### Plaintiff Miah Salim Mohammad

117.     Defendants hired Mr. Mohammad on March 2, 2014 to work as a day shift cashier.

118.     Mr. Mohamad was unlawfully terminated on or about June 7, 2018.

119.     Throughout his employment, Mr. Mohammad would typically work eleven (11) hours per day, six (6) days per week, for a total of approximately sixty-six (66) hours per week.

120.     Mr. Mohammad worked from approximately 8:45 a.m. to 8:00 p.m. at Village Farm Grocery, with one ten (10) to fifteen (15) minute break to eat.

121.     Defendants grossly underpaid Mr. Mohammad during all relevant times. Specifically, from March 2014 through June 2018, Defendants paid Mr. Mohammad at a pay rate of $6.25 per hour—a pay rate that is in direct violation of the statutorily mandated minimum wage.

122.     Further, despite consistently working approximately sixty-six (66) hours per week, Defendants never paid Mr. Mohammad at the statutory overtime rate for the hours that he worked in excess of forty (40) each week, which is one-and-one-half-times his regular hourly rate, or one-and-one-half-times the prevailing minimum wage.

123.     Defendants have never provided Mr. Mohammad with a wage statement at any point during his employment.  Likewise, Defendants have never provided Mr. Mohammad with a pay stub that lists the hours that he worked in a pay period or his rate of pay.

124.     Upon commencing his employment, Mr. Mohammad informed Defendants that he was a Muslim, and that he observed Muslim traditions and laws.  Mr. Mohammad explained further that as part of his religious obligations, for approximately one month designated by the Islamic calendar, he would observe Ramadan. During Ramadan, Muslims refrain from eating food from dawn until sunset, among other requirements.

125.     Each year, prior to the start of Ramadan, Mr. Mohammad would approach Defendants and request a minor accommodation, which was to leave work at approximately 6:00 p.m. during the month of Ramadan, rather than his usual 8:00 p.m., thus ensuring that he would be home in time to break the fast.  This request was eminently reasonable considering the fact that Mr. Mohammad would still work a full eight hours each day, and that he did not receive *any* compensation for his overtime hours, let alone overtime compensation at the mandatory statutory rate.

126.     Nonetheless, in violation of the law, Defendants refused to accommodate Plaintiff's requests. During the month of Ramadan, they consistently denied Mr. Mohammad the right to leave work at the time he requested.

127.     Defendants also criticized Mr. Mohammad's observance by making improper remarks such as: "If you are hungry, then just eat" and "hungry employees do not properly serve customers."   Mr. Mohammad repeatedly informed Defendants that such remarks were inappropriate.

128.     On June 7, 2018, during Ramadan, Mr. Mohammad was directed by Defendants to work past 6:00 p.m.  Mr. Mohammad reminded Defendants that he was fasting in observance of Ramadan and asked to leave at a reasonable hour. Defendants refused his request.  In an attempt

to compromise with Defendants, Mr. Mohammad proposed that he would work until 7:00 p.m. that day.

129.     At 7:00 p.m., while Plaintiff was preparing to leave work, Defendant Mangesh Shah saw him and warned him: "If you leave now, don't come back."  When Mr. Mohammad stated that the law allowed for accommodations for religious observance, Mangesh Shah silenced Mr. Mohammad and said definitively: "My store, my laws."

130.     Mr. Mohammed returned to his home to break his fast. As of that day, he was terminated.

131.     Mr. Mohammad's termination was wholly pretextual, as there was absolutely no legitimate basis for terminating his employment. To the contrary, during the course of Mr. Mohammad's employment and prior to his termination, Mr. Mohammad was an exemplary employee and he was not subject to any warnings, evaluations or probationary periods.

132.     In fact, Mr. Mohammed was terminated in retaliation for engaging in protected activity and requesting an accommodation due to his religious observance.

## AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Violations of the FLSA, 29 U.S.C. §§ 201 - 219: Minimum Wage Violations)*

133.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

134.     The FLSA requires an employer to pay employees the federally mandated minimum wage rate for every hour worked up to forty (40) hours per workweek.

135.     Plaintiffs worked as delivery drivers, cashiers and watchmen for Defendants in excess of forty (40) hours per week, during the relevant statutory period, for which they were paid

at rates ranging from $6.00 from 2006 through 2012, and between $6.50 and $9.50 per hour from 2012 to 2018.

136.    Defendants violated the FLSA by failing to pay Plaintiffs the federally mandated minimum wage of $7.25 per hour for hours worked up to (40) hours per workweek.

137.    Defendants' violations of the FLSA were knowing and willful.

138.    Based on the foregoing, the Defendants are liable for the unpaid minimum wages of the Plaintiffs and the FLSA Plaintiffs, plus liquidated damages, costs and reasonable attorneys' fees.

**AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
*(For Violations of the FLSA, 29 U.S.C. §§ 201 – 219: Federal Overtime Violations)*

139.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

140.    The FLSA requires an employer to pay employees the federally mandated overtime rate of one-and-one-half times their regular rate of pay for every hour worked in excess of forty (40) per workweek.

141.    Plaintiffs routinely worked for Defendants in excess of forty (40) hours per week, during the relevant statutory period, for which they did not receive overtime pay at the mandatory statutory rate.

142.    Defendants violated the FLSA by failing to pay Plaintiffs the federally mandated overtime premium for all hours worked in excess of forty (40) hours per workweek.

143.    Defendants' violations of the FLSA were knowing and willful.

144.    Based on the foregoing, the Defendants are liable for the unpaid overtime wages of the Plaintiffs and the FLSA Plaintiffs, plus liquidated damages, costs and reasonable attorneys' fees.

## AS AND FOR A THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### *(For Violation of FLSA, 29 U.S.C. § 203(m) - Tip Credit Violations)*

145.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

146.    Defendants consistently misappropriated Plaintiffs' tip for themselves, and failed to comply with any of the statutory requirements that would entitle them to a tip credit.

147.    Defendants are not entitled to take any tip credits under the FLSA because, inter alia, they: (i) failed to properly provide tip credit notice at hiring and annually thereafter; (ii) failed to inform that the tip credit claimed by Defendants could not exceed the amount of tips actually received by the tipped employees; (iii) failed to inform employees that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement; (iv) failed to inform employees that the tip credit would not apply unless tipped employees have been informed of the foregoing tip credit notice requirement; and (v) failed to meet other statutory requirements for taking a valid tip credit under the FLSA.

148.    Defendants' practice of failing to pay Plaintiffs and the FLSA Plaintiffs minimum wages in the lawful amount for all hours worked was willful, intentional, and in violation of the FLSA.

149.    By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

## AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### *(For Violation of New York Labor Law § 652: Minimum Wage Violations)*

150.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

151.     The NYLL § 652(1)(a)(i) requires "large" employers with more than eleven ("11")

employees located in New York City to pay employees a minimum hourly rate of:

> $7.25 on and after July 24, 2009
> $8.00 on and after December 31, 2013
> $8.75 on and after December 31, 2014
> $9.00 on and after December 31, 2015
> $9.70 on and after December 31, 201
> $11.00 on and after December 31, 2016
> $13.00 on and after December 31, 2017

152.     Plaintiffs worked as delivery persons, cashiers and watchmen for Defendants in

excess of forty (40) hours per week, for which they were paid at a rate ranging from $6.00 per hour

through 2012 to between $6.50 and $9.50 per hour in 2018.

153.     Defendants violated the NYLL by failing to pay Plaintiffs and class members the

required minimum wage for all hours worked up to (40) hours per workweek.

154.     Defendants' violations of the NYLL were knowing and willful.

155.     Based on the foregoing, the Defendants are liable for the unpaid minimum wages

of the Plaintiffs and the New York Class, plus liquidated damages, costs and reasonable attorneys'

fees.

### <u>AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS</u>
*(For Violation of N.Y.C.R.R. and NYLL § 160 et seq. - Overtime Pay Violations)*

156.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above

with the same force and effect as if more fully set forth herein.

157.     N.Y. Lab. Law § 160 and N.Y.C.R.R. tit. 12, § 142-2.2 require employers to

compensate their employees at a rate not less than one-and one-half times their regular rate for any

hours worked exceeding forty in a workweek.

158.     As described above, Defendants are "employers" within the meaning of the NYLL, while Plaintiffs and the New York Class are or were "employees" within the meaning of the NYLL.

159.     Plaintiffs and the New York Class were required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-one-half times their regular rate of pay.

160.     Defendants willfully violated the NYLL and N.Y.C.R.R.

161.     By reason of the foregoing, Defendants are liable for unpaid overtime wages, in an amount to be determined at trial, plus liquidated damages, interest, costs and attorneys' fees.

**AS AND FOR AN SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS**
*(For Violation of NYLL and N.Y.C.R.R. Tit. 12 § 146-1.3 - Tip Credit Violations)*

162.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

163.     Defendants consistently misappropriated Plaintiffs' tip for themselves, and failed to comply with any of the statutory requirements that would entitle them to a tip credit.

164.     Under N.Y.C.R.R. Tit.12 § 146-1.3, an employer may take a "tip credit" *only* if an employee receives enough tips to equal or exceed the basic minimum hourly rate pursuant to § 146-1.2, *and* if the employee has received notice pursuant to § 146-2.2.

165.     In willful violation of N.Y.C.R.R. Tit.12 § 146-2.2, Defendants did not provide notice of the "tip credit" to Plaintiffs or the New York Class.

166.     Defendants' failure to provide notice to Plaintiffs and the New York Class before taking the tip credit was willful and in violation of N.Y.C.R.R. Tit.12 § 146-1.3.

167.     By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Failure to Furnish Proper Wage Statements in Violation of the NYWTPA)*

168.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

169.     NYLL § 195(3) and the NYWTPA requires that employers furnish employees with wage statements containing specific enumerated criteria on each occasion when the employer pays wages to the employee.

170.     Defendants did not issue accurate pay stubs to the Plaintiffs in violation of New York Labor Law § 195(3) and the NYWTPA.

171.     Specifically, Plaintiffs were not given any pay stubs which accurately reflected the number of hours and overtime hours worked each and every week, since they were paid in cash exclusively.

172.     This practice was and is willful and in violation the NYWTPA.

173.     Additionally, Defendants also did not issue annual wage statements to the Plaintiffs as required by New York Labor Law § 195(1) and the NYWTPA.

174.     Specifically, Plaintiffs were not given wage statements at the time of hiring or at any time during their employment that contained the specific categories of information requires under NYLL § 195(1).

175.     This practice was and is willful and in violation the NYWTPA.

176.     By reason of the foregoing, Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(For Violation of 12 N.Y.C.R.R.§ 142-2.4: Spread of Hours Pay)*

177.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

178.     Plaintiffs and the New York Class routinely worked in excess of ten (10) hours a day without being compensated for the legally mandated spread of hours pay.  This practice is in violation of 12 N.Y.C.R.R. § 142-2.4.

179.     These practices were willful and lasted for the duration of the relevant time periods.

180.     By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

## AS AND FOR A NINTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Failure to Provide Meal Breaks in Violation of NYLL § 162)*

181.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

182.     New York Labor Law § 162(2) requires employers to provide a thirty (30) minute uninterrupted meal break to every employee who works a shift of six (6) or more hours over the noonday period.

183.     New York Labor Law § 162(4) requires employers to provide a forty-five (45) minute uninterrupted meal break to every employee who works a shift of six (6) or more hours between the hours of 1:00 p.m. and 6:00 a.m.

184.     New York Labor Law § 162(3) requires employers to provide an additional twenty-minute break to every employee who works a shift starting before 11:00 a.m. and continuing later than 7:00 p.m.

185.    Plaintiffs and the New York Class routinely worked shifts in excess of six (6) hours without receiving an uninterrupted meal break or additional break, when necessary.

186.    Defendants violated New York Labor Law § 162 by failing to provide the required breaks to Plaintiffs and New York Class.

187.    These practices were willful and lasted for the duration of the relevant time periods.

188.    By reason of the foregoing, the Defendants are liable in an amount to be determined at trial, plus costs and attorneys' fees.

### AS AND FOR A TENTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*(Unlawful Deductions in Violation of the NYLL § 193 and 12 NYCRR § 195-4.5)*

189.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

190.    New York Labor Law §193(1) prohibits employers from making any deductions from an employee's wages except for those permitted by law or those made for the benefit of the employee which are explicitly authorized in writing by the employee.

191.    New York Labor Law §193(2) prohibits employers from making any charge against an employee's wages or requiring an employee to make any payment by separate transaction, unless such payment is a permitted deduction pursuant to New York Labor Law §193(1).

192.    In requiring Plaintiffs and the putative class members, as employees, to maintain vehicles, purchase fuel, and pay for rental fees and parking costs, Defendants have violated New York Labor Law §193 and 12 N.Y.C.R.R. § 195-4.5.

193.    Based on the foregoing, Plaintiffs and the putative class members are entitled to recover the cost of the expenses the Defendants illegally shifted to Plaintiffs and the putative class members, attorneys' fees and costs, pre-judgment and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

31

## AS AND FOR AN ELEVENTH CLAIM FOR RELIEF
## BY PLAINTIFF ROY MATHEW AGAINST DEFENDANTS
*(Violation of NYLL § 215: Unlawful Retaliation)*

194.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

195.    Defendants intentionally, willfully, and maliciously terminated Plaintiff Roy Mathew's employment in violation of § 215 of the New York Labor Law.

196.    On or about February 5, 2017, the law office of Joseph & Norinsberg, LLC sent a letter to the within Defendants formally advising them that Mr. Mathew had retained legal counsel in connection with his claims against Defendants for their multiple violations of the NYLL.

197.    In response, Defendants immediately engaged in retaliatory conduct and decreased Mr. Mathew's hours.

198.    Mr. Mathew requested to be reinstated at his former position, and at the same time, requested his outstanding compensation, along with his overtime wages, tips, and other expenses.

199.    In response, Defendants' retaliation escalated, and they withheld payment from Mr. Mathew.

200.    Mr. Mathew made a second request and again asked for his outstanding compensation, along with his overtime wages, tips, and other expenses.

201.    Shortly thereafter, Defendants advised Mr. Mathew that they no longer had an employment position for him.

202.    Defendants discharged Mr. Mathew because he engaged in protected activity.

203.    The temporal proximity between Plaintiff's exercise of his rights under the NYLL and Defendants' adverse employment action give rise to an inference of retaliation.

204.    By reason of the foregoing, Plaintiff Roy Mathew is entitled to all appropriate relief, including, but not limited to, reinstatement, enjoining Defendants from further retaliation, payment of lost and withheld compensation in an amount to be determined at trial, back pay, emotional distress damages, liquidated damages, interests, costs and attorneys' fees.

### AS AND FOR A TWELFTH CLAIM FOR RELIEF
### BY PLAINTIFF MIAH SALIM MOHAMMAD AGAINST DEFENDANTS
*(Discrimination on the Basis of Religion in Violation of NYSHRL, N.Y. Exec. Law § 296;*
*and NYCHRL, N.Y.C. Admn. Code § 8-107)*

205.    Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

206.    Defendants discriminated against Plaintiff Miah Salim Mohammad on the basis of his religion (Muslim) in violation of NYSHRL, N.Y. Exec. Law § 296; and NYCHRL, N.Y.C. Admn. Code § 8-107, by failing to provide Mr. Mohammad with an accommodation for his religious observance.

207.    Specifically, Defendants refused to permit Mr. Mohammad to leave work at 6:00 p.m. during the month of Ramadan, despite the fact that this request was eminently reasonable, considering Mr. Mohammad did not receive *any* compensation for his overtime hours, let alone compensation at the mandatory statutory rate for any hours he worked in excess of forty (40) hours per week.

208.    When Mr. Mohammad claimed that the law allowed for an accommodation for his religious observance, Defendants disagreed. Worse still, Defendants terminated Mr. Mohammad's employment when he left work one day during Ramadan, at 7:00 p.m.

209.    But for Mr. Mohammad's religious practice, he would not have been denied the requested accommodation, and he would not have been baselessly discharged from his employment.

210.     Defendants' discriminatory treatment against Mr. Mohammad was intentional, willful, malicious and reckless disregard of Mr. Mohammad's rights.

211.     The motivating factor for the discriminatory treatment was Mr. Mohammad's religion.

212.     As a direct and proximate result of Defendants' unlawful discriminatory conduct, Mr. Mohammad has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

213.     As a further direct and proximate result of Defendants' unlawful actions, Mr. Mohammad has suffered damage to his reputation and career.

214.     As a further direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL and NYCHRL, Mr. Mohammad has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to humiliation, embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF
## BY PLAINTIFF MIAH SALIM MOHAMMAD AGAINST DEFENDANTS
*(Retaliation in Violation of NYSHRL, N.Y. Exec. Law § 296(1) and (7);*
*and NYCHRL, N.Y.C. Admn. Code § 8-107)*

215.     Plaintiffs repeat, reiterate, and reallege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

216.     Defendants have violated NYSHRL, N.Y. Exec. Law § 296(1) and (7); and NYCHRL, N.Y.C. Admn. Code § 8-107 by retaliating against Plaintiff Miah Salim Mohammad who opposed an unlawful employment practice.

217.    When Mr. Mohammad asked for a reasonable accommodation for his observation of Ramadan, Defendants wrongfully denied his request.

218.    Mr. Mohammad engaged in protected activity by explaining that Defendants' conduct was unlawful.

219.    In response, Defendants immediately engaged in retaliatory conduct and terminated Mr. Mohammad's employment.

220.    Defendants' acts of retaliation were intentional, willful, malicious and in reckless disregard for Mr. Mohammad's rights.

221.    The temporal proximity between Mr. Mohammad's exercise of his rights under the NYSHRL and NYCHRL and Defendants' adverse employment action give rise to an inference of retaliation.

222.    As a direct and proximate result of Defendants' unlawful retaliatory conduct in violation of the NYSHRL and NYCHRL, Mr. Mohammad has suffered and continues to suffer damages, in many forms including, but not limited to, loss of income, loss of future earnings and severe emotional distress, mental anguish pain and suffering.

223.    As a direct and proximate result of Defendants' retaliatory conduct in violation of the NYSHRL and NYCHRL, Mr. Mohammad has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to humiliation, embarrassment, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Roy Mathew, Jayson Yesudasan, Abdur Howlader, Miah Salim Mohammad, the FLSA Plaintiffs and the New York Class, demand judgment against the Defendants SMZ IMPEX, INC., FARM AND GROCERY, INC., Kusum Shah, Bharat Shah, Jigar Shah, Mangesh Shah and Jagesh Shah as follows:

A.  Preliminary and permanent injunctions against Defendants and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with Defendants, from engaging in each of the unlawful practices, policies, customs and usages set forth herein;

B.  A judgment declaring that the practices complained of herein are unlawful and in violation of the FLSA, 29 U.S.C. §§ 201-219; New York Labor Law § 650 *et seq*; New York Labor Law § 195; the tip credit requirement of the FLSA, 29 U.S.C. § 203(m) and 12 N.Y.C.R.R. § 146-1.3; New York Labor Law § 162; New York Labor Law § 193; the New York "spread of hours" pay required under 12 N.Y.C.R.R. § 142-2.4; and the religious anti-discrimination provisions of the NYSHRL, N.Y. Exec. Law §§ 296(1)  and (7) and NYCHRL, N.Y.C. Admin. Code §8-107.

C.  An award to the Plaintiffs, FLSA Plaintiffs and New York Class for all damages sustained as a result of Defendants' conduct, including back pay, general and special damages for lost compensation, and job benefits they would have received but for Defendants' improper practices;

D.  An award to individual plaintiffs for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

E.   An award to the Plaintiffs, FLSA Plaintiffs and New York Class of exemplary damages in an amount commensurate with Defendants' ability and so as to deter future malicious, reckless, and/or intentional conduct where appropriate;

F.   An award to the Plaintiffs, FLSA Plaintiffs and New York Class for costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, and expert witness fees;

G.   An award to the Plaintiffs, FLSA Plaintiffs and New York Class of pre-judgment and post-judgment interest, as provided by law; and

H.   Granting Plaintiffs other and further relief as this Court deems just and proper.

Date:   New York, New York
        July 3, 2018

Respectfully submitted,

JOSEPH & NORINSBERG, LLC

By: _____
Chaya M. Gourarie, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 227-5700
chaya@norinsberglaw.com
*Attorneys for Plaintiffs and Putative Class*

TO:

Marshall B. Bellovin, Esq.
Kristian E. Alfonso, Esq.
729 Seventh Avenue, 17th Floor
New York, New York 10019
*Attorneys for Defendants*