UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────────

ROY MATHEW, et al., *individually and on behalf of others similarly situated,*

                Plaintiffs,

            -v-

SMZ IMPEX, INC., et al.,

                Defendants.

17-CV-9870 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    Plaintiffs Roy Mathew, Jayson Yesudasan, Abdur Howlader, and Miah Salim Mohammad bring this action individually and on behalf of others similarly situated against SMZ Impex, Inc., Village Farm and Grocery, Inc., Kusum Shah, Bharat Shah, Jigar Shah, Mangesh Shah, and Jagesh Shah (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, New York Labor Law, New York Wage Theft Protection Act, New York State regulations, New York State Human Rights Law, and New York City Human Rights Law.  In connection with their FLSA claims, Plaintiffs seek (1) unpaid minimum wages, (2) unpaid overtime, (3) tip credit, (4) liquidated damages, and (5) attorney's fees and costs.  (Dkt. No. 25 ("Am. Compl.") ¶¶ 133–149.)  Before the Court is Plaintiffs' motion for conditional collective action certification with respect to their FLSA claims.  (Dkt. No. 40.)  For the reasons that follow, Plaintiffs' motion is granted.

**I.    Background**

    Village Farm is a grocery store that offers traditional retail grocery shopping as well as delivery services to customers within Manhattan.  (Am. Compl. ¶ 43.)  Village Farm employs more than 65 employees and pays employees on a weekly basis in cash.  (Am. Compl. ¶¶ 45–

1

46.) Plaintiffs allege that Village Farm is owned and operated by Defendant SMZ Impex, Inc. and Defendant Village Farm and Grocery, Inc., which are domestic business corporations. (Am. Compl. ¶¶ 2, 19, 24.) Defendant Kusum Shah is the principal owner, chief executive officer, shareholder, director, supervisor, and managing agent for SMX Impex, Inc. (Am. Compl. ¶ 22.) Defendant Bharat Shah is an owner, shareholder, director, supervisor, and managing agent of Village Farm grocery store and participates in day-to-day operations of the store. (Am. Compl. ¶ 26.) Defendant Jigar Shah was the operations manager of the Village Farm grocery store and oversaw the day-to-day operations. (Am. Compl. ¶ 28.) Defendant Mangesh Shah was the general manager of the Village Farm grocery store. (Am. Compl. ¶ 29.) And Defendant Jagesh Shah was the delivery manager of the Village Farm grocery store. (Am. Compl. ¶ 30). Plaintiffs, who all claim to have been employed by Village Farm, allege among other things that Defendants violated the FLSA by failing to pay the federal minimum wage of $7.25 per hour, failing to pay overtime, and misappropriating tips. (Am. Compl. ¶¶ 11–18, 47–48, 53, 59.)

     Plaintiff Roy Mathew began working for Village Farm in 2009 as a delivery driver and a night watchman. (Am. Compl. ¶ 80.) Mathew alleges that he typically worked between nine and twelve hours per day, six to seven days a week, for a total of seventy-two hours per week, and that he occasionally worked up to eighty-five or eighty-six hours per week. (Am. Compl. ¶ 81, 83.) He also alleges that he worked overnight, generally from either 7:00 p.m. to 4:00 a.m. or 4:00 p.m. to 4:00 a.m. (Am. Compl. ¶ 82.) Mathew claims that he was paid at a rate of $6.50 per hour, in cash, on a weekly basis, from 2009 to 2012, and a rate of $8.00 per hour, in cash, on a weekly basis, from 2012 to 2017. (Am. Compl. ¶¶ 84–85.) Mathew alleges, however, that he was not paid overtime rates despite working more than forty hours per week. (Am. Compl. ¶ 87.) Mathew also claims that Defendants consistently misappropriated his tips and provided

doctored receipts that listed a smaller tip than what was given by the customer. (Am. Compl. ¶ 88.) Mathew further alleges that Defendants did not provide him with wage statements. (Am. Compl. ¶ 89.) Mathew claims that he was demoted and later terminated around February 2017 after he complained to Defendants about his wages and expressed his intention to file the present lawsuit. (Am. Compl. ¶¶ 92, 95–96.)

Plaintiff Jayson Yesudasan began working for Village Farm in January 2015 as a delivery driver. (Am. Compl. ¶ 97.) Yesudasan alleges that from January 2015 through January 2017 he typically worked twelve hours a day, from 10:00 a.m. to 10:00 p.m., six days a week, for a total of seventy-two hours per week. (Am. Compl. ¶ 98.) Yesudasan alleges that, during his tenure with Village Farm, Defendants paid him $8.00 per hour, in cash, on a weekly basis. (Am. Compl. ¶ 99.) Like Mathew, Yesudasan alleges that he did not receive overtime, his tips were misappropriated, and he did not receive any wage statements. (Am. Compl. ¶¶ 101–03.)

Plaintiff Abdur Howlader began working for Village Farm in 2006 as a night shift cashier. (Am. Compl. ¶ 107.) Howlader alleges that he typically worked eleven hours per day, six days a week, for a total of sixty-six hours per week. (Am. Compl. ¶ 108.) He claims that he worked from 6:00 p.m. to 5:00 a.m., with one ten- to fifteen-minute break to eat. (Am. Compl. ¶ 109.) Howlader alleges that from July 2006 to June 2013 he was paid at a rate of $6.00 per hour, in cash, on a weekly basis; from July 2013 to November 2016, he was paid $9.50 per hour, in cash, on a weekly basis. (Am. Compl. ¶¶ 110–11.) Howlader claims, however, that he was not paid overtime despite working at least sixty-six hours a week. (Am. Compl. ¶ 112.) He also alleges that he was never provided any wage statements while employed by Defendants. (Am. Compl. ¶ 113.)

Plaintiff Miah Salim Mohammad began working for Village Farm around March 2, 2014 as a day shift cashier. (Am. Compl. ¶ 117.) Mohammad claims that throughout his employment he typically worked eleven hours per day, six days a week, for a total of sixty-six hours per week. (Am. Compl. ¶ 119.) Mohammad alleges that he worked from approximately 8:45 a.m. to 8:00 p.m. with one ten- to fifteen-minute break to eat. (Am. Compl. ¶ 120.) He alleges that he was paid a rate of $6.25 per hour from March 2014 to June 2018 and was never paid overtime despite working around sixty-six hours a week. (Am. Compl. ¶¶ 121–22.) Mohammad also alleges that he was never provided any wage statements.[1] (Am. Compl. ¶ 123.)

Plaintiffs filed the complaint in this case on December 18, 2017, asserting, *inter alia*, FLSA claims against Defendants, and Defendants answered that initial complaint on February 27, 2018. (Dkt. Nos. 1, 21.) Plaintiffs filed an amended complaint on July 10, 2018, which Defendants answered on August 31, 2018. (Dkt. Nos. 25, 31.) On September 10, 2018, the parties stipulated to stay fact discovery and adjourn a court-ordered mediation *sine die* until Plaintiffs' anticipated conditional certification motion had been filed, briefed, and resolved. (Dkt. No. 33; *see also* Dkt. No. 59.) Plaintiffs ultimately moved for conditional certification of a collective action under the FLSA on December 21, 2018 (Dkt. No. 40), and that motion is now before the Court.

## II.     Legal Standard

The FLSA authorizes employees to sue on behalf of "themselves and other employees similarly situated" for violations of certain FLSA provisions. 29 U.S.C. § 216(b); *see also Colon*

---

[1] Mohammad alleges that Defendants unlawfully failed to reasonably accommodate his religious practice and ultimately terminated him for engaging in protected religious activity. (Am. Compl. ¶¶ 124–132.) These allegations implicate only state and municipal antidiscrimination law and so are not relevant to the consideration of whether conditional certification of an FLSA collective action is appropriate in this case.

4

*v. Major Perry St. Corp.*, No. 12 Civ. 3788, 2013 WL 3328223, at *3 (S.D.N.Y. July 2, 2013). To participate in a FLSA collective action, similarly situated employees must opt in by filing their "consent in writing to become . . . a party." 29 U.S.C. § 216(b); *see also Colon*, 2013 WL 3328223, at *3.

The Second Circuit has established a two-step process for certifying a collective action under the FLSA. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Colon*, 2013 WL 3328223, at *4 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010)). "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs." *Id.* at *5 (quoting *Myers*, 624 F.3d at 555). If not, the action may be decertified. *Id.*

The first step of the analysis—called "conditional certification"—"requires only a 'modest factual showing' from plaintiffs that 'they and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law.'" *Id.* at *4 (quoting *Myers*, 624 F.3d at 555). In other words, plaintiffs must identify a "factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (quoting *Alvarez v. Schnipper Rests. LLC*, No. 16 Civ. 5779, 2017 WL 6375793, at *2 (S.D.N.Y. Dec. 12, 2017)) (internal quotation mark omitted). "Accordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit." *Id.* (quoting *Escobar v. Motorino E. Vill. Inc.*, No. 14 Civ. 6760, 2015 WL 4726871, at *2 (S.D.N.Y. Aug. 10, 2015)).

5

"[A]t the conditional certification stage, 'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'" *Hypolite v. Health Care Servs. of N.Y. Inc.*, 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017) (quoting *Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)). "If the employees are similarly situated . . . , 'any factual variances that may exist between the plaintiff and the putative class [will] not defeat conditional . . . certification.'" *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (second alteration in original) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007)).

"[T]he initial 'conditional certification' determination is merely a preliminary finding." *Lynch*, 491 F. Supp. 2d at 368. At the second stage, after plaintiffs have opted in and discovery has occurred, "the court undertakes a more stringent factual determination as to whether members of the class are, in fact, similarly situated." *Id.*

### III.     Discussion

Plaintiffs seek to conditionally certify an FLSA collective action that includes cashiers, deliverymen, and night watchmen who were employed by Defendants from December 18, 2014, to the present. (Dkt. No. 41 ("Pls.' Br.") at 5; Dkt. No. 42-2 at 1.) Defendants primarily argue that Plaintiffs have not demonstrated that they and other individuals employed by Defendants were similarly situated. (Dkt. No. 53 ("Defs.' Br.").) The Court will consider (1) whether Plaintiffs meet the standard for conditional certification of their FLSA claims as a collective action; (2) whether Plaintiffs' proposed notice to the putative class is appropriate; and (3) whether equitable tolling is necessary at this time.

A.  **Conditional Certification**

Defendants argue that Plaintiffs have not shown a nexus between Plaintiffs and the putative class because Plaintiffs' allegations are conclusory and based on speculation rather than personal knowledge. (Defs.' Br. at 3–6.) The Court disagrees.

Plaintiffs' allegations in the amended complaint are supported by four sworn affidavits, and two exhibits, including time sheets, which are sufficient to grant conditional certification. (Dkt. Nos. 43–46.) At the outset, a single affidavit is often sufficient to support conditional certification. *Shillingford*, 293 F. Supp. 3d at 407. Here, there are four affidavits, which (1) describe the personal experiences of individuals occupying all the roles that Plaintiffs seek to include in the collective action; (2) corroborate one another; and (3) outline Defendants' unwillingness to respond to complaints by Plaintiffs regarding pay.

For example, both Mathew and Yesudasan, who were delivery persons, note that Defendants withheld tips, and doctored receipts to show a lesser amount than was paid by the customer. (Dkt. No. 44 ¶ 8; Dkt. No. 46 ¶ 8.) Mathew further notes that he complained about Defendants' pay practices, but that Defendants responded by threatening to file a phony criminal charge against him. (Dkt. No. 44 ¶ 11.) Similarly, Mohammad and Howlader were both cashiers, and both report that they were paid below minimum wage, that they worked over forty hours and were not paid overtime, that they did not receive wage statements or paystubs, and that their annual W-2s did not accurately reflect their hours worked and compensation. (Dkt. No. 43 ¶¶ 5–8; Dkt. No. 45 ¶¶ 5–8.) These sworn allegations from multiple employees provide the modest factual showing necessary for conditional certification. *See Garcia v. Spectrum of Creations Inc.*, 102 F. Supp. 3d 541, 548–49 (S.D.N.Y. 2015) (holding that conditional certification was warranted where employee affidavits corroborated one another and provided personal observations of the practices of management at a single location).

7

Furthermore, Mohammad attached two exhibits to his affidavit, which provide further factual support for conditional certification. (Dkt. Nos. 43-1, 43-2.) The first exhibit includes time sheets, which show that several employees, and not merely Plaintiffs, worked in excess of forty hours a week. (Dkt. No. 43-1.) Though the records do not include any information regarding how much these individuals were paid, the hours they worked coupled with the four affidavits alleging routine underpayment by Defendants meets the requirement of a modest factual showing at this stage. *Fan v. Ping's on Mott, Inc.*, No. 13 Civ. 4939, 2014 WL 1512034, at *2 (S.D.N.Y. Apr. 14, 2014) (granting conditional certification in part because the "[p]laintiff . . . produced several timesheets from [the defendants] showing that he and other employees regularly worked at least ten hours per shift after accounting for breaks").

The second exhibit is a letter dated April 10, 2018 from Defendants, which indicates that Defendants paid Mohammad $260 per week, which translates into an hourly rate of $6.50 assuming a forty-hour work week—a rate below the required the federal minimum wage of $7.25. Moreover, because the time sheets suggest that Mohammad was working *more* than forty hours a week, it is possible that he was paid at a rate even lower than $6.50 an hour. (Dkt. No. 43-2.)[2] When the affidavits, time sheets, and letter from Defendants are all considered together, Plaintiffs have made a modest factual showing that they were similarly situated to other employees at Village Farm.

The cases upon which Defendants rely to dispute Plaintiffs' motion are inapposite. In *Camper v. Home Quality Management Inc.*, 200 F.R.D. 516 (D. Md. 2000), the court granted conditional certification, but limited certification to the facility in which plaintiffs worked

---

[2] This exhibit includes an unredacted Social Security number, which raises privacy concerns. The Clerk of the Court is requested to place this exhibit under seal.

because plaintiffs supported their motion with evidence related to said facility and did not adduce evidence as to any other facilities, *id*. at 520–21.  Even if *Camper* were controlling in this circuit, which it is not, the case supports *Plaintiffs'* motion because the *Camper* court granted certification based on deposition testimony and sworn declarations from multiple individual plaintiffs who, like Plaintiffs here, described their own individual experience of the alleged FLSA violations.  *Id*. at 520.  Next, in *Zheng v. Good Fortune Supermarket Group (USA), Inc.*, No. 13 Civ. 60, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013), the court denied conditional certification because (1) the plaintiff did not identify other workers who were similarly situated to her or provide the basis for her observations, *id*. at *5; and (2) the defendants provided twenty-eight sworn declarations and the plaintiff's payroll records, which indicated that she was afforded meal breaks and was compensated for the hours she worked, *id*. at *3.  Conversely, in this case, (1) there are four plaintiffs who occupied different roles and who experienced similar treatment; (2) there are time sheets that indicate the possibility that other employees were similarly situated; and (3) Defendants have not provided any evidence undermining Plaintiffs' allegations.

The Court concludes that Plaintiffs have made the requisite modest factual showing that cashiers, deliverymen, and night watchmen were the victims of a common policy or plan that violated the law.

    **B.**    **Notice**

Defendants do not object to the form of Plaintiffs' proposed notice.  (*See* Dkt. No. 42-2.) Defendants merely argue that Plaintiffs have failed to make the modest factual showing necessary for conditional certification, and that Plaintiffs are therefore not entitled to discovery of Defendants' employees' contact information.  (Defs.' Br. at 8.)  As the Court has held that Plaintiffs have met their burden for conditional certification, Defendants' argument fails.

9

Moreover, based on its review, the Court holds that the form of the proposed notice is appropriate, as it informs opt-in plaintiffs of the pendency of the lawsuit and their opportunity to join as represented plaintiffs.  *See Myers*, 624 F.3d at 554 (holding that district courts have the discretion to certify a collective action by facilitating notice to potential plaintiffs of the "pendency of the action and of their opportunity to opt-in as represented plaintiffs").  However, Plaintiffs are directed to update the notice to reflect that Judge Sweet is no longer presiding over this case.

Plaintiffs also request that Defendants post notice in English, Spanish, and Bengali at Village Farm, along with other branches or locations associated with SPZ Impex, Inc.  (Pls.' Br. at 13–14.)  Courts in this Circuit routinely approve requests to post notice at a defendant's place of business and in each location a potential collective action member is employed.  *See Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 96 (E.D.N.Y. 2010) (collecting cases).  Courts approve "such postings even where the notice will be mailed to prospective plaintiffs, finding defendants' objections of repetitiveness, disruption, and burden unpersuasive and noting that to do so 'maximizes potential plaintiffs' opportunities to be informed of the pendency of the litigation and consider whether to opt in.'"  *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 487 (S.D.N.Y. 2016) (quoting *Bittencourt v. Ferrara Bakery & Café Inc.*, 310 F.R.D. 106, 118 (S.D.N.Y. 2015)).  Here, the Court will grant Plaintiffs' request to post notice in English, Spanish, and Bengali as to Village Farm only.  Plaintiffs speculate that Defendants may operate other businesses with similar labor practices, but have not made any factual showing in this regard.  Accordingly, notice is appropriately limited to Village Farm.

Additionally, Plaintiffs' request that Defendants provide Plaintiffs "a complete list in electronic form of names, mail addresses, email addresses, and telephone numbers of their

current and former cashiers, deliverymen and night watchmen, performing similar duties from December 18, 2014, until the date th[e] motion [for conditional collective certification] is decided" is reasonable.  (Pls.' Br. at 15.)  *See Martin v. Sprint/United Mgmt. Co.*, No. 15 Civ. 5237, 2016 WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016) (noting that "[c]ourts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a FLSA collective action" (collecting cases)).

### C. Equitable Tolling

Plaintiffs also request that the Court toll the FLSA statute of limitations "for all similarly situated individuals from the date of the motion to certify until the date the Court issues an order on the motion."  (Pls.' Br. at 15.)  The Court grants Plaintiffs' request, as Plaintiffs have diligently pursued their claims and potential opt-in Plaintiffs should "not be penalized due to the courts' heavy dockets."  *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).  Indeed, "the delay caused by the time required for a court to rule on a motion, such as one for certification of a collective action in a FLSA case, may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine."  *Id*. (citing *Yahraes v. Rest. Assocs. Events Corp.*, No. 10 Civ. 935, 2011 WL 844963, at *2 (E.D.N.Y. Mar. 8, 2011)).

### IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for conditional collective action certification is GRANTED.  The parties are directed to file a joint letter regarding the parties' respective positions on mediation and the schedule for discovery within fourteen days after the date of this order.

The Clerk of Court is directed to close the motions at Docket Numbers 40 and 50. The Clerk is also directed to place Docket Number 43-2 under seal as it includes an unredacted Social Security number.

SO ORDERED.

Dated: September 16, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge